UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| JOSE SANTOYA JUAREZ,<br><br>              Petitioner,<br><br>v.<br><br>STEVE HAMMER, WARDEN, M.C.F. RUSH CITY, and ATTORNEY GENERAL FOR THE STATE OF MINNESOTA, LORI SWANSON,<br><br>              Respondents. | Case No. 14-cv-4048 (WMW/FLN)<br><br><br><br>**REPORT AND RECOMMENDATION** |

This matter is before the undersigned on the petition of Jose Santoya Juarez ("Juarez"), for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The parties have briefed the issues fully. ECF Nos. 1, 2, 20. The case has been referred for report and recommendation under 28 U.S.C. § 636 and Local Rule 72.1. For the reasons discussed below, the Court recommends that Juarez's habeas corpus petition be denied, and that this action be dismissed with prejudice.

BACKGROUND

On habeas review, "a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). The factual background was summarized by the Minnesota Supreme Court as follows:

> On July 27, 2010, S.M. was at the Eagles Club bar in Willmar, Minnesota, with several friends. While at the bar, S.M. received unwanted sexual attention from Juarez. Juarez was intoxicated at the time and, by his own admission, had consumed at least 16 beers. Despite S.M.'s objections, Juarez touched her legs and breasts, and also attempted to touch her genital area. Someone

1

>complained to the bartender, Juarez was asked to leave, and eventually he did.
>
>Shortly thereafter, S.M. left the bar to smoke a cigarette. When she went outside, Juarez came up behind her, grabbed her by the arm, and dragged her 209 feet across a parking lot and then to the back end of a narrow alley between two buildings. The alley was only 22 inches wide and was littered with garbage and debris. As Juarez forced S.M. into the alley, he grabbed her head and struck it against the cement wall two or three times, causing her to lose consciousness briefly. He called S.M. sexually derogatory names, told her that he knew she wanted to have sex with him, and said that she was "going to get it either way." S.M. screamed for help, but Juarez told her to stop screaming or he would make her stop. Juarez grabbed her breasts and genital area, ripped her shirt, and attempted to remove her pants. Eventually, he climbed on top of S.M. and pinned her arms with his knees. Juarez tried to force his penis into her mouth, but he was interrupted when S.M.'s friends arrived on the scene and threw Juarez off her. Juarez fled, but police captured him a short time later, and he was positively identified as the assailant by S.M. and two of her friends.

*State v. Juarez*, 837 N.W.2d 473, 478 (Minn. 2013).

A grand jury charged Juarez with attempted first-degree criminal sexual conduct, second-degree criminal sexual conduct, kidnapping and third-degree assault. *Juarez*, 837 N.W.2d at 478. The indictment for second degree criminal sexual conduct included an allegation that Juarez was subject to the enhanced sentencing provision of Minn. Stat. § 609.3455, subd. 2(a)(2). That provision "requires a court to sentence an offender convicted of certain types of first- or second-degree criminal sexual conduct to life imprisonment without the possibility of release if the offender has a previous qualifying sex offense conviction 'and the fact finder determines that a heinous element exists.' Minn.Stat. § 609.3455, subd. 2(a)(2)." *Juarez*, 837 N.W.2d at 478. The indictment against Juarez alleged that the statutory prerequisites were met because Juarez had "removed [S.M.] from one place to another, did not release her in a safe place, and had a prior conviction" for third-degree criminal sexual conduct. *Id*.

2

Juarez waived his right to a jury trial at both the guilt and sentencing phases and the same judge presided over the bench trial for the guilt phase and the evidentiary hearing on the sentencing enhancement. *Id*. at 478-79. In her findings of fact for the guilt phase, the trial court judge found that Juarez had

> removed [S.M.] from just outside the back door of the Eagles Club and took her against her will to the north end of the alley . . . a distance of 209 feet . . . Defendant grabbed her right arm and wrist from behind and dragged her to the alley, forced her into the alley and eventually to the north end of the alley. She tried to resist . . . She did not consent to going with him to this alley.

*Id*. at 479.

After the trial court found Juarez guilty on all counts, the state sought a mandatory life sentence based on the second degree criminal sexual conduct. During the sentencing phase, the state introduced evidence of Juarez's prior conviction for third degree criminal sexual conduct based on "an incident in which he engaged in forcible, nonconsensual intercourse with his brother's girlfriend." *Juarez*, 837 N.W.2d at 479. In sentencing Juarez according to the mandatory life sentence without release statute, the trial judge relied on evidence from the guilt phase to establish the heinous element of removal for the sentencing enhancement. *Id*. The court sentenced Juarez to life imprisonment without release under Minn. Stat. § 609.3455 subd. 2. Juarez appealed and the court of appeals affirmed. *State v. Juarez,* 2012 WL 5476119 (Minn.App. Nov. 13, 2012).

HABEAS STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides the standards that govern this Court's review of Juarez's habeas corpus claims. Section 2254(d)(1) provides that an application for a writ of habeas corpus that has already been decided in state

3

court proceedings shall not be granted unless it was "contrary to, or involved an unreasonable application of, clearly established Federal law" as decided by the United States Supreme Court. 28 U.S.C. § 2254(d)(1).[1]

The Supreme Court has determined that "[u]nder the 'contrary to' clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Williams v. Taylor,* 529 U.S. 362, 412-13 (2000). "[A] run-of-the-mill state-court decision applying the correct legal rule" would not provide a basis for granting a writ under the "contrary to" clause even if the state court's view did not match the "federal court's conception of how [the rule] ought to be applied in that particular case." *Id*. at 406.

As to the "unreasonable application" clause, a writ may be granted if "the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id*. at 409. The Court has stated that "Congress specifically used the word 'unreasonable' and not a term like 'erroneous' or 'incorrect.'" *Id*. at 411. For that reason, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal

---

[1] Circuit precedent does not constitute "clearly established Federal law, as determined by the Supreme Court." *Renico v. Lett*, 559 U.S. 766, 779 (2010). It therefore cannot form the basis for habeas relief. *See Parker v. Matthews*, 132 S.Ct. 2148, 2155 (2012) (reversing Sixth Circuit where it relied on its own "elaborate multistep test" for prosecutorial misconduct but Supreme Court precedent had used a "highly generalized standard for evaluating" such claims).

law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id* at 411. For the application to be unreasonable, a habeas court must ask "whether it is possible fairminded jurists could disagree that [the arguments or theories that supported the state court's decision] are inconsistent with the holding in a prior decision" of the Supreme Court. *Harrington v. Richter*, 562 U.S. 86, 102 (2011). If fairminded jurists could disagree, the high hurdle for a grant of habeas has not been met.

"AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings' and 'demands that state-court decisions be given the benefit of the doubt'". *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal citations omitted). The more general the rule the state court is applying, the more leeway it has in reaching the outcome. *Id*. at 776 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). A habeas petitioner has a difficult standard to meet and the United States Supreme Court has said "it was meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2010). "As amended by AEDPA, §2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." *Id*. Section 2254(d) of the AEDPA is meant to "reflect the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems.'" *Id*. at 103 (citation of pre-AEDPA case omitted). The statute, along with the habeas exhaustion requirements, ensures "that state proceedings are the central process, not just a preliminary step for a later federal habeas proceeding." *Id*.

HABEAS REVIEW OF CRUEL AND UNUSUAL PUNISHMENT CLAIM

In this case, Juarez challenges his mandatory life without possibility of release sentence as cruel and unusual punishment under the Eighth Amendment. "The concept of proportionality

is central to the Eighth Amendment." *Graham v. Florida*, 560 U.S. 48, 59 (2010). There are two types of analyses the Supreme Court has applied to determine if a punishment violates the Eighth Amendment. In the case-by-case analysis, the "court considers all of the circumstances of the case to determine whether the sentence is unconstitutionally excessive." *Graham*, 560 U.S. at 59. In these cases, the crime and punishment seem wildly out of proportion as in the case of a "life without parole sentence for the defendant's seventh nonviolent felony, the crime of passing a worthless check." *Graham*, 560 U.S. at 59 (citing *Solem v. Helm*, 463 U.S. 277 (1983)). However, as the concurring opinion noted in *Harmelin* where the Court came out the other way from *Solem* for an offender who was sentenced to life without parole for a drug possession charge, the Eighth Amendment's proportionality principle is narrow and "forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Harmelin v. Mich.*, 501 U.S. 957, 1001 (1991) (Kennedy. J., concurring). Under the analysis described in *Harmelin*, and later summarized in *Graham*, the "approach for determining whether a sentence for a term of years is grossly disproportionate for a particular defendant's crime" requires "comparing the gravity of the offense and the severity of the sentence." *Graham*, 560 U.S. at 60 (citing Justice Kennedy's opinion in *Harmelin*). In the "rare case" where there is an "inference of gross disproportionality", the court should "compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions." *Graham*, 560 U.S. at 60 (again citing to Justice Kennedy's opinion in *Harmelin*).

The second analysis the Supreme Court has used for Eighth Amendment cases involves "categorical rules." Under this analysis, the Supreme Court considers "the nature of the offense" and "the characteristics of the offender." *Graham,* 560 U.S. at 60. For example, the death

penalty is impermissible for non-homicide crimes and for offenders who are either juveniles or have intellectual functioning in the low range. *Graham*, 560 U.S. at 61. And in *Graham* itself, the Supreme Court held that the Eighth Amendment bans the sentencing of juveniles who commit non-homicide crimes to life without parole. *Graham*, 560 U.S. at 74. Building on *Graham*, the Supreme Court in *Miller v. Alabama*, 132 S.Ct. 2455 (2012), applied the categorical approach to ban sentencing schemes that mandate life in prison without possibility of parole for juvenile offenders. *Milller*, 132 S.Ct. at 2469. The court did not ban life without parole for juveniles altogether but rather concluded that – like in cases involving the death penalty – the sentencing must be individualized to take into account factors such as age. *Milller*, 132 S.Ct. at 2469.

Additionally, in the context of habeas review of an Eighth Amendment challenge to a sentence, "the governing legal principle gives legislatures broad discretion to fashion a sentence that fits within the scope of the proportionality principle -- the 'precise contours' of which 'are unclear.'" *Lockyer v. Andrade*, 538 U.S. 63, 76 (2003) (quoting Justice Kennedy's concurrence in *Harmelin*, 501 U.S. 957, 998 (1991)). The United States Supreme Court has made clear that "[b]ecause AEDPA authorizes federal courts to grant relief only when state courts act unreasonably, it follows that '[t]he more general the rule' at issue – and thus the greater the potential for reasoned disagreement among fair-minded judges – 'the more leeway [state] courts have in reaching outcomes in case-by-case determinations.'" *Renico*, 559 U.S. at 776. "In these circumstances, where the 'precise contours' of the right remain 'unclear,' state courts enjoy 'broad discretion' in their adjudication of a prisoner's claims." *White v. Woodall*, 134 S.Ct. 1697, 1705 (2014) (quoting *Lockyer*, 538 U.S. at 76).

MINNESOTA SUPREME COURT DECISION

Using the *Graham* framework, the Minnesota Supreme Court summarized the two types of analyses that the United States Supreme Court has outlined for Eighth Amendment challenges. *State v. Jaurez*, 837 N.W.2d 473, 480 (Minn. 2013). Concluding that Juarez asserted a case-by-case challenge to his sentence, the Minnesota Supreme Court then compared "the gravity of the offense to the severity of the sentence" to determine if there is "an inference of gross disproportionality." *Id*. at 480. The Minnesota Supreme Court concluded that the combination of the heinous nature of Juarez's criminal sexual conduct as well as his prior criminal sexual conduct offense and the removal of his victim to a hidden space between two buildings accounted for the severity of his sentence. *Id*. at 480-81 (citing *Coker v. Georgia*, 433 U.S. 584, 597-98 (1977)). "Courts have long recognized the seriousness of rape and other sexual assault crimes" and "[s]tates have a valid interest in deterring and segregating habitual criminals' and . . . '[r]ecidivism has long been recognized as a legitimate basis for increased punishment." *Juarez*, 837 N.W.2d at 481 (citing *Ewing v. California*, 538 U.S. 11, 25 (2003) and *Solem v. Helm*, 463 U.S. 277, 296 (1983)). The Minnesota Supreme Court deferred to "the Legislature['s] [conclusion] that certain recidivist sex offenders should be treated more severely than other recidivist offenders." *Juarez,* 837 N.W.2d at 481. The Minnesota Court concluded that it "need not proceed to the second step of the case-by-case analysis to compare Juarez's sentence with sentences received by other offenders both inside and outside of the jurisdiction." *Id*. (citing *Graham* and *Ewing*).

In his petition, Juarez compares his sentence to the sentences for other offenses in Minnesota and concludes that it is disproportionate. ECF No. 2 at 5-6. He also states that "[t]he incident did not involve death . . . sexual penetration, or even great bodily harm." ECF No. 2 at 7. His attempt to minimize the conduct -- or compare it to other crimes -- fails to recognize that

he is being penalized for a repeat offense and a repeat sex offense in particular. *See Norris v. Morgan*, 622 F.3d 1276, 1292, 1296 (9th Cir. 2010), *cert denied*, 562 U.S. 1228 92011) (mandatory life without parole for repeat sex offender not cruel and unusual even where defendant attempted to label sexual conduct as "de minimis"; reflects legislative judgment regarding repeat sex offenders); *see also* Respondent's Answer in Opp. to Habeas Petition, ECF No. 20 at 18-21, 30-31 (discussing sexual assault and recidivism). The Minnesota Supreme Court's conclusion that Juarez's sentence was not disproportionate was not, therefore, objectively unreasonable.

The Court notes that in his petition Juarez repeatedly cites to cases involving the categorical approach and at times argues the categorical analysis should apply to the facts of his case. *See* Memo in Support of Petition, ECF No. 2 at 5 ("the appropriate analysis is the categorical approach"). In his reply brief, however, Juarez states that he is making a case-by-case challenge. Petitioner's Reply, ECF No. 24 at 2 ("Juarez asserts a case-by-case challenge here"); *see also* Resp. Answer in Opp. to Petition for Writ of Habeas Corpus, ECF No. 20 at 16 (expressing uncertainty as to Juarez's arguments). Juarez cites a number of cases including *Roper*, *Graham* and *Miller*, which ban certain punishments for certain offenders using the categorical approach. Petition, ECF No. 2 at 5-6. However, all three of the cases he cites involve juveniles: *Roper* banned the death penalty for juveniles; *Graham* banned life without parole for juveniles who commit non-homicide crimes; and *Miller* banned mandatory life without parole sentencing schemes for juveniles. *Roper v. Simmons*, 543 U.S. 551, 568 (2005); *Graham*, 560 U.S. at 82; *Miller*, 132 S.Ct. at 2460. Juarez's reliance, at age 52 at the time of sentencing, *Jaurez*, 837 N.W.2d at 480, on the categorical approach cases banning certain punishments for juveniles is unpersuasive. *See U.S. v. Capps*, 716 F.3d 494, 499 (8th Cir. 2013) ( refusing to "re-

9

examine" the Circuit's Eighth Amendment case law in light of *Miller,* 132 S.Ct. 245, for a defendant who was not a juvenile). In fact, Juarez himself concedes that he does not fit into any of the categorical bans so far set out by the United States Supreme Court but suggests that this Court could carve out a new categorical ban. He states: "[T]he United States Supreme court has not yet declared life imprisonment without possibility of parole unconstitutional per se. But it is clear the court is *moving in that direction*." ECF No. 2 at 6 (emphasis added).

This argument disregards the standard of review under AEDPA, which requires that only settled precedent of the United States Supreme Court can form the basis for granting a habeas petition. 28 U.S.C. § 2254(d)(1)-(2); *see also Harrington v. Richter*, 562 U.S. 86, 102 (2011). In fact, the United States Supreme Court has made it clear that habeas courts cannot "require state courts to extend . . . precedent" nor does AEDPA "license federal courts to treat the failure to do so as error." *White v. Woodall*, 134 S.Ct. 1697, 1706 (2014). "'[I]f a habeas court must extend a rationale before it can apply to the facts at hand' then by definition the rationale was not 'clearly established at the time of the state-court decision.' . . . AEDPA's carefully constructed framework 'would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law.'" *White*, 134 S.Ct. at 1706 (quoting *Yarborough*, 541 U.S. at 666).[2] No settled precedent under the categorical analysis applies to Juarez's case. To declare a categorical ban on life without parole sentences for recidivist adults like Juarez would be charting new territory and is not the role of this Court on habeas review. "The critical point is that relief is available under 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no

---

[2] The Court in *Yarborough* noted that "the difference between applying a rule and extending it is not always clear." *Yarborough*, 541 U.S. at 666. The facts of this case are *not* an example of this problem.

'fairminded disagreement' on the question." *White*, 132 S.Ct. at 1706-1707.  That is not the case here.

The Minnesota Supreme Court's decision was not "contrary to" nor did it involve "an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."

BLAKELY

Under the Sixth Amendment right to jury trial, the U.S. Supreme Court has held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Blakely v. Washington*, 542 U.S. 296, 301 (2004) (quoting *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)).

Juarez claims in his habeas petition that the judge who presided over both phases could not rely on evidence from the guilt phase during the sentencing phase.  ECF No. 2 at 8.  In particular, Juarez challenges the "heinous element" sentencing enhancement whereby "the offender, without the complainant's consent, removed the complainant from one place to another and did not release the complainant in a safe place." ECF No. 2 at 7; Minn. Stat. 609.3455 subd. 1(d)(8) and subd. 2(2).  In her findings of fact, the trial judge concluded that (1) "[d]efendant removed S.L.M. from just outside the back door of the Eagles Club and took her against her will [to an alley] . . . a distance of 209 feet"; (2) "[d]efendant confined her in the alley"; and (3) "S.L.M. was not released by defendant in a safe place."  Findings of Fact, Conclusions of Law and Order, ECF No. 6 at 4-5.  These same findings are reiterated in her Verdict on Blakely Issues.  ECF No. 6 at 10.

The Minnesota Supreme Court concluded that Juarez "properly waived his right to a jury at both the guilt phase and the sentencing phase." *Juarez*, 837 N.W.2d at 486 (citing *Blakely*, 542 U.S. at 310, for proposition that a defendant has the right to "consent to judicial factfinding as to sentence enhancements"). "Although it is undisputed that the State presented evidence of the[] facts during the guilt phase of the proceeding, Jaurez argues that the State was required to re-introduce the evidence during the sentencing phase". *Juarez*, 837 N.W.2d at 485. The Minnesota Supreme Court held that while "the relevant facts used to enhance the sentence . . . must be found beyond a reasonable doubt", the district court "did not err in relying on evidence from the guilt phase." *Id*. "Neither *Apprendi* nor *Blakely* requires that the evidence presented in the guilt phase of the proceeding must also be presented to the same factfinder in the sentencing phase of the proceeding. In appropriate circumstances, a factfinder may rely on testimony and evidence from the trial when making findings on sentencing enhancements." *Juarez*, 837 N.W.2d at 486 (citing *Bell v. Cone*, 535 U.S. 685, 691 (2002)).

Juarez provides no citation to U.S. Supreme Court precedent for this claim other than *Blakely* itself but *Blakely* does not hold that all evidence from the guilt phase must be repeated to the same trier of fact at the sentencing phase. Juarez does not assert that the evidence was not proved beyond a reasonable doubt. Rather, he claims the state had to prove the evidence for his sentencing enhancement twice – once at the guilt phase and then again at the sentencing phase – even though the evidence was the same and the trier of fact was the same.[3] *Blakely* does not require this kind of redundancy in criminal trials. *See Mack v. McCann*, 530 F.3d 523, 536 (7th Cir. 2008) (where defendant's state of mind was "both an element of the crime and part of the

---

[3] Juarez argued to the Minnesota Supreme Court that he should have had notice that the guilt phase evidence would be relied upon for the enhancement. *Juarez*, 837 No.W.2d at 486. He does not make that argument here.

12

aggravating factor sentencing scheme . . . [t]he Constitution . . . does not require the State to prove [defendant's] state of mind twice"); *Jones v. Hulick*, 449 F.3d 784, 791 (7th Cir. 2006), *cert denied*, 549 U.S. 1121 (2007) (where the sentencing factor was found beyond a reasonable doubt at guilt phase, there is no *Apprendi* violation).

The Minnesota Supreme Court's conclusion that "the district court satisfied the requirements of *Blakely* and *Apprendi* and properly enhanced Juarez's sentence" was not "contrary to" settled United States Supreme Court precedent nor was it an objectively unreasonable application of that precedent.

CERTIFICATE OF APPEALABILITY

A § 2254 habeas corpus petitioner cannot appeal an adverse ruling on his petition unless he is granted a Certificate of Appealability ("COA"). 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A COA cannot be granted, unless the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3). To make such a showing, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Slack v. Daniel*, 529 U.S. 473, 484 (2000), or that the "issues presented were 'adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003) (quoting *Slack*, 529 U.S. at 484). Although Juarez need not show that his appeal will succeed to be granted a COA, "issuance of a COA must not be *pro forma* or a matter of course." *Miller-El*, 537 U.S. at 337.

In this case, the Court finds it unlikely that any other court, including the Eighth Circuit Court of Appeals, would decide Juarez's claims any differently than they have been decided here. Juarez has not identified anything novel, noteworthy or worrisome about this case that

warrants appellate review. His claims fit squarely outside the United States Supreme Court Eighth Amendment cases and *Blakely* and the Minnesota Supreme Court's decision did not raise any concerns for this Court. It is therefore recommended that Juarez not be granted a COA in this matter.

Based on the foregoing, and all the files, records and proceedings herein,

IT IS HEREBY RECOMMENDED that:

1.  Juarez's petition for writ of habeas corpus under 28 U.S.C. § 2254, (ECF No. 1), be DENIED;

2.  This action be DISMISSED WITH PREJUDICE; and

3.  Juarez NOT be granted a Certificate of Appealability.


Dated:  March 3, 2016                              s/*Franklin L. Noel*
                                                   FRANKLIN L. NOEL
                                                   United States Magistrate Judge


### NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be

considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.